UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JAMES A. MUHAMMAD, individually
and on behalf of all others similarly
situated,

       Plaintiff,

v.                               Civil Action No. 2:07-0423

NATIONAL CITY MORTGAGE, INC.
f/k/a NATIONAL CITY MORTGAGE CO.,

       Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>


      Pending is the plaintiff's unopposed motion for final approval of the settlement, attorneys' fees and costs and service award, filed December 1, 2008.[1]  The court has considered the plaintiff's written submissions and held a final approval hearing December 19, 2008, at which John W. Barrett and Jonathan R. Marshall appeared for the plaintiff and Bryant J. Spann, Marcel C. Duhamel, and Peter G. Markham appeared for the defendant.

---

    [1] According to the agreement of the plaintiff and defendant, since the commencement of this lawsuit, National City Mortgage, Inc. merged into National City Bank, which assumed National City Mortgage, Inc.'s liabilities.  The merger does not affect the rights of the parties to this dispute.

## I. Nature of the Case and Claims

This action involves allegedly illegal mortgage loan servicing by National City.  Mr. Muhammad is a Charleston resident who lives with his wife and young son.  (First Am. Compl. ¶ 2).  In December 2003, Mr. Muhammad purchased the family's home and financed the purchase with a mortgage loan from the defendant.  (Id. ¶ 4).  The defendant is also servicing the loan.

Mr. Muhammad commenced this action in the Circuit Court of Kanawha County on June 5, 2007.  Defendant removed on the basis of jurisdiction conferred by 28 U.S.C. §§ 1332 and 1441. In his first amended complaint, Mr. Muhammad alleges that two of the defendant's loan servicing practices -- the imposition of certain late fees, and the refusal to accept partial loan payments -- violate the defendant's obligations of good faith and fair dealing and the West Virginia Consumer Credit and Protection Act.

Regarding late fees, Mr. Muhammad alleges that the defendant unlawfully charges multiple late fees when a borrower has been late on only one occasion.  (First Am. Compl. ¶¶ 11, 20-21).  For instance, assume a borrower owes a monthly payment

2

in January, but fails to make the payment.  Assume further that
he or she then makes a payment by the due date in February and
all successive months.  In this scenario, defendant applies the
February payment to the January payment, and assesses a late fee
in January and February.  When the March payment comes in,
defendant then applies that payment to February and charges
another late fee.

Regarding the refusal to credit payments, plaintiff's
discovery has revealed that defendant's practices work like
this:[2]  When a borrower pays what defendant considers to be less
than the full amount due, defendant temporarily places the
payment in a suspense account, rather than apply it to the
balance due.  Then defendant notifies the borrower that he or she
has ten days to pay the difference between the partial payment
and the regular monthly payment.  If the borrower does not make
up the difference, defendant returns the partial payment to the
borrower.  (Id. ¶¶ 10, 20).

As class representative, Mr. Muhammad experienced both
the multiple late fees and refusal to credit payments.  Discovery

---

[2] Defendant does not, by virtue of entering the settlement
or by agreeing not to oppose plaintiff's motion, concede the
truth of any of these allegations.

has revealed that defendant charged the multiple late fees to West Virginia borrowers on 2,763 occasions, representing 747 loans, and returned partial payments to borrowers on 96 occasions, representing 85 loans.  (Second Am. Class Action Settlement Agreement and Release ("Settlement Agreement") ¶ 2, Doc. No. 66).

Defendant, for its part, maintains that these claims are preempted by federal law, and specifically by provisions of the National Bank Act and by regulations promulgated by the Office of the Comptroller of the Currency pursuant to that Act. That assertion, as well as other arguments, is the basis of a now-pending motion to dismiss the case in its entirety.

## II. The Proposed Settlement

### A. Settlement Terms

The settlement requires defendant to pay $700,000. (Id. ¶ 3).  This figure is an "all-in" payment that will cover all settlement expenses -- payment to class members, a proposed $5,000 service award to Mr. Muhammad, attorney fees and costs, and costs of settlement administration and notice.  (Id.).

As the settlement contemplates, the court in its preliminary approval order created two settlement classes -- (a) those consumers who were charged the allegedly unlawful late fee, and (b) those whose partial payments were returned.  Class members will receive a pro rata distribution of the $700,000 settlement amount, after deductions for settlement expenses, for each allegedly unlawful late fee and returned partial payment. (Id.).  As stated above, defendant imposed the allegedly unlawful late fees on 2,763 occasions, and returned partial payments to borrowers on 96 occasions.  Members of both subclasses will receive an equal pro rata share of the settlement.  (Id.). Therefore, the gross distribution (i.e., before deduction for the court-approved attorney fees and other settlement expenses), is $244.84 ($700,000 divided by 2,859).  In other words, each class member will receive $244.84, before deductions, for each late fee and each returned payment.  If the court awards a fee of 1/3 the amount of the settlement ($233,333), plus reasonable case expenses ($9,000), and a service award of $5,000, and settlement administration expenses of $20,309, class members will receive a net cash payment of $151.22 for each qualifying late fee and each returned partial payment.

Based on information supplied by defendant, it appears

5

that the average class member was either charged a late fee or
had a partial payment returned 3.4 times.  Therefore, the gross
average payment per class member is an estimated $832.46; the
average net payment is $514.14.

Because the defendant's records identify class members
who were charged multiple late fees and whose partial payments
were returned, and also identify the number of late fees and
returned partial payments for each class member, class members
will not be required to submit claim forms.  Instead, the
settlement administrator will mail checks to all class members
who do not opt-out.  This procedure ensures that a vast majority
of -- if not all -- class members will enjoy the cash benefits of
the settlement.

The settlement provides important non-cash relief for
class members, as well.  Defendant must request the
credit-reporting agencies delete all negative references to class
members' accounts, to the extent to which those references were
made for payment activity prior to April 23, 2008.  (Id. ¶ 13).

B. Notice and Administrative Provisions

Rule 23(c)(2) requires "the best notice practicable

6

under the circumstances, including individual notice to all
members who can be identified through reasonable effort."  Fed.
R. Civ. P. 23(c)(2).  The court has ordered individual mailed
notice, and the settlement administrator has completed all notice
obligations.  (David Epperly Aff., Exhibit 1 to Pl.'s Mot.).  To
date, the administrator has incurred administrative expenses of
$4,309.  (Id. ¶ 10).  The administrator expects to incur an
additional $16,000 in expenses to mail settlement checks and
locate class members who have not been located to date.  (Id.).
Plaintiff requests the court set aside this sum from the
settlement fund to pay the administrator's future costs.


                        III. Fairness Determination


          "The court must approve any settlement . . . of the
claims . . . of a certified class."  Fed. R. Civ. P. 23(3)(1)(A).
The court may do so only after a hearing and on finding that the
proposed settlement is fair, reasonable, and adequate.  Id. at
23(e)(1)(C).  Such approval is required to ensure that any
settlement reached is consistent with the plaintiff's fiduciary
obligations to the class.  In re Jiffy Lube Secs. Litig., 927
F.2d 155, 158 (4th Cir. 1991).


                                7

The Fourth Circuit Court of Appeals utilizes a bifurcated analysis for class action settlements, separating the inquiry into the fairness of the settlement from the inquiry into its adequacy.  See id. at 158-59.  In assessing the fairness of a proposed settlement, the court must consider the following four factors: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of class action litigation.  Id.  Based upon the following analysis of the factors, the court concludes that the settlement is fair.

A. The Posture of the Case at the Time Settlement Was Proposed and the Extent of Discovery

When reviewing a settlement, courts should consider the stage of the current litigation and the amount of discovery that the parties have completed.  Id.  This factor assists the court in evaluating whether the plaintiff and his counsel have sufficiently developed the case such that they can appreciate the merits of the claims.  In re Serzone Prods. Liab. Litig., 231 F.R.D. 221, 244 (S.D. W. Va. 2005) (Goodwin, J.).  "There is, however, no minimum or definitive amount of discovery that must be undertaken."  Id. (citing Jiffy Lube, 927 F.2d at 159).

8

At the time the parties reached settlement, they had fully briefed defendant's motion to dismiss. Plaintiff had obtained all relevant documents from defendant, and had completed a critical Rule 30(b)(6) deposition that covered all aspects of defendant's loan-servicing practices regarding the imposition of late fees and rejection of partial loan payments. The deposition also afforded plaintiff the opportunity to evaluate defendant's determination of the size and identity of the class. Plaintiff was assisted at the deposition by Kevin P. Byers, an Atlanta CPA and recognized expert in loan-servicing and other aspects of the lending industry. (John W. Barrett Decl. ¶ 8, Exhibit C to Pl.'s Mot. for Prelim. App., Doc. No. 61). Only after completing this deposition did the parties discuss settlement. (Id.). Accordingly, the court finds that the circumstances relating to this factor weigh in favor of a finding of fairness.

B. Circumstances Surrounding the Negotiations and Whether the Settlement is the Product of Hard-fought, Arms-length negotiation

Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. Newberg on Class Actions § 11.28 at 1159 (3d ed. 1992); see Polar Int'l Brokerage Corp. v. Reeve, 187 F.R.D. 108, 112 (S.D.N.Y.

1999 (the court must look at the negotiating process leading to settlement in order to ensure that "the compromise be the result of arms'-length negotiations and that plaintiff's counsel have possessed the . . . ability . . . necessary to effectively represent the class's interests.") (citing <u>Weinberger v. Kendrick</u>, 698 F.2d 61,74 (2d Cir. 1983)).

As earlier noted, the litigation was hard-fought and the settlement was reached only after the parties had briefed defendant's motion to dismiss and plaintiff completed sufficient discovery.  There is no evidence or even suggestion of either bad faith or collusion.

C. Experience of Counsel in the Area of Class Action Litigation

The opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration.  "When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." <u>Rolland v. Cellucci</u>, 191 F.R.D. 3, 10 (D. Mass. 2000); <u>see also</u> <u>In re Compact Disc Litig.</u>, 216 F.R.D. at

212 (noting that in determining fairness of settlement proposed by counsel, the court considers the experience and level of competence of class counsel).

Here, class counsel are skilled and experienced in class action litigation, and have served as class counsel in several cases, including consumer lending cases. (Barrett Decl. ¶ 6). In counsel's view, the settlement is fair and reasonable, and takes into account the expected class recovery, discounted for the possibility of losing either on the merits or on National Bank Act-preemption grounds, and further discounted for the possibility of the delay associated with continued litigation, trial and appeal. The court finds that this factor weighs in favor of a finding of fairness.

The court, having found each of the four factors to weigh in favor of a finding of fairness, concludes that the settlement is fair.

IV. Adequacy Determination

In assessing the adequacy of a proposed settlement, the court must consider the following five factors: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence

11

of any difficulties of proof or strong defenses the plaintiffs
would likely encounter if the case were to go to trial; (3) the
anticipated duration and expense of additional litigation; (4)
the solvency of the defendants and the likelihood of recovery on
a litigated judgment; and (5) the degree of opposition to the
settlement.  Jiffy Lube, 927 F.2d at 159.  Based upon the
following analysis of the factors, the court concludes that the
settlement is also adequate.

A. Relative Strength of the Plaintiffs' Case on the Merits and
Existence of Any Difficulties of Proof or Strong Defenses the
Plaintiffs Might Encounter if the Case Were to Go to Trial

        "The most important factor to be considered in
determining whether there has been such clear abuse of discretion
is whether the trial court gave proper consideration to the
strength of the plaintiff's case."  Flinn v. FMC Corp., 528 F.2d
1169, 1172 (4th Cir. 1976).  "[I]f the settlement offer was
grossly inadequate, it can be inadequate only in light of the
strength of the case presented by plaintiffs."  Id. at 1172
(quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 (2d
Cir. 1974)).

        The essence of any settlement is compromise.  A
settlement compromising conflicting positions in class action

litigation serves the public interest.  See Rolland v. Cellucci,
191 F.R.D. 3, 11 (D. Mass. 2000) (although plaintiffs' counsel
originally pressed for faster changes in defendant's practices
than the schedule memorialized in settlement, the court noted
that the settlement reflected a fair compromise between the
parties).  In evaluating a settlement, the trial court should not
decide the merits, or proceed from the assumption that victory is
one hundred percent assured and that all claimed damages are
properly recoverable.  See In re Compact Disc Litig., 216 F.R.D.
at 211 (the role of the court is not to "second-guess" the
settlement but to decide whether its overall terms are
reasonable).  As one court has observed, "[a] settlement is by
nature a compromise between the maximum possible recovery and the
inherent risks of litigation.  The test is whether the settlement
is adequate and reasonable and not whether a better settlement is
conceivable."  In re Warfarin Sodium Antitrust Litig., 212 F.R.D.
231, 258 (D. Del. 2002) (citation omitted).

        The proposed settlement reflects a reasonable
compromise.  Although plaintiff believes he would have prevailed
on class certification and on the merits, the fact remains that
defendant could also prevail on those issues.  Defendant also
could prevail, either before this court or the court of appeals,

on its National Bank Act preemption defense.  A loss for the plaintiff on any of those matters would result in a zero recovery for the class.  The proposed settlement takes this into account, but at the same time pays a substantial recovery to class members.  Accordingly, the court finds that this factor weighs in favor of a finding of adequacy.

B. Anticipated Duration and Expense of Additional Litigation

The complexity, expense, and duration of litigation are factors that support approval of a settlement.  See In re Corp. Litig., 264 F.3d 201, 231, 233 (3d Cir. 2001); Girsh v. Jepson, 521 F.3d 153, 157 (3d Cir. 1975) (identifying complexity, expense, and duration as one of nine factors in determining the fairness of settlement).  The parties could have litigated the case to judgment and taxed the resources of the litigants and the court.  Instead, the parties elected to forgo the expense and uncertainty of continued litigation and, once the threshold facts regarding the class size and the defendant's loan servicing policies were determined, focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account.

14

**C. Solvency of the Defendants and Likelihood of Recovery on a Litigated Judgment**

The banking industry is in a state of disarray. Although National City Corporation, the parent of defendant National City Mortgage Co., is one of the nation's largest financial-holding companies, it has been hard-hit hard by the current banking crisis.  It reported a net loss of $1.8 billion for the second quarter of 2008, compared to a net loss of $171 million in the first quarter of 2008, and net income of $347 million the second quarter of last year.  (Mem. Supp. Mot. 11). One colorful internet source ranks National City at number 209 on the list of "imploded lenders."  (Id.).  More recently, National City has signed an agreement with PNC Financial Services Group to be purchased by PNC, and appears solvent.  (Id.).  Nonetheless, in these uncertain financial times, no financial institution's solvency can be taken for granted.  The proposed settlement avoids all risk of eventual insolvency and provides immediate cash to class members.

**D. Reaction of Class Members to the Proposed Settlement and the Degree of Opposition to the Settlement**

"The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the

15

settlement, is a proper consideration for the trial court."
Flinn, 528 F.2d at 1173. "While approval of a proposed class
settlement is not a matter to be decided by a plebiscite, the
views of putative class members are certainly relevant and
entitled to great weight." In re Silicone Gel Breast Implant
Liab. Litig., No. CV 94-P-11558-S, MDL 926, 1994 WL 578353 (N.D.
Ala. Sept. 1, 1994). If class members opt-out, the court should
examine the circumstances to determine whether the opt-outs
reflect an organized campaign or the sentiments of the class at
large. Serzone Products, 231 F.R.D. at 245-246 (citing Manual
for Complex Litigation (Fourth) § 21.631 (2004)). Nevertheless,
"[a] settlement is not unfair simply because a large number of
class members oppose it." Flinn, 528 F.2d at 1173.

No class member has objected to the proposed
settlement, and only three have opted out. (Epperly Aff. ¶ 8).
The lack of objections and opt-out requests are important factors
contributing to a conclusion that the settlement is fair and
reasonable.

Based upon the forgoing, the court concludes that the
proposed settlement is not only fair, but is also adequate.

## V. Reasonableness of Attorneys' Fees and Costs

Awarding attorney fees as a percentage of the benefit to the class is the preferable and prevailing method of determining fee awards in class actions that establish common funds for the benefit of the class. As explained infra, the requested award of one-third of the common fund, plus costs, is reasonable under the circumstances of this case. It is noteworthy that no class member has objected to the fees and costs sought by counsel, or to any other aspect of the settlement.

## A. The Percentage of Fund Method is an Appropriate Measure for Determining Attorneys' Fees

Premised on the equitable powers of the court, the common fund doctrine allows a person who maintains a suit that results in the creation, preservation or increase of a fund in which others have a common interest, to be reimbursed from that fund for the litigation expenses incurred. Cent. R.R. & Banking Co. v. Pettus, 113 U.S. 116 (1885). "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S.

17

472, 478 (1980).

Although the Fourth Circuit has not determined the preferred method for calculating attorneys' fees where a common fund has been generated on behalf of a class, all circuits that have considered the issue have approved the use of the percentage method. <u>Goldenberger v. Integrated Res., Inc.</u>, 209 F.3d 43 (2d Cir. 2000); <u>Cook v. Niedert</u>, 142 F.3d 1004, 1013 (7th Cir. 1998); <u>In re Thirteen Appeals Arising out of San Juan DuPont Plaza Hotel Fire Litig.</u>, 56 F.3d 295, 307 (1st Cir. 1995); <u>In re Wash. Pub. Power Supply Sys. Litig.</u>, 19 F.3d at 1291, 1295 (9th Cir. 1994); <u>Gottlieb v. Barry</u>, 43 F.3d. 474 (10th Cir. 1994); <u>Rawlings v. Prudential-Bache Prop., Inc.</u>, 9 F.3d 513, 516 (6th Cir. 1993); <u>Swedish Hosp. Corp. v. Shalala</u>, 1 F.3d 1261, 1271 (D.C. Cir. 1993); <u>Longden v. Sunderman</u>, 979 F.2d 1095, 1099 (5th Cir. 1992)); <u>Camden I Condo. Ass'n</u>, 946 F.2d 768, 773-774 (11th Cir. 1991).  Indeed, the D.C. and Eleventh circuits have mandated use of the percentage of fund method.  <u>Swedish Hosp.</u>, 1 F.3d at 1271; <u>Camden I Condo. Ass'n</u>, 946 F.2d at 774.  <u>See</u> <u>generally</u> 1 Alba Conte, <u>Attorney Fee Awards</u> § 2.02 at 31 (2d ed. 1993); <u>Court Awarded Attorney Fees, Report of the Third Circuit Task Force</u> ("Task Force Report"), 108 F.R.D. 237 (1985) (Prof. Arthur R. Miller, Reporter).

18

The percentage method "is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'"  In re Prudential Ins. Co. Am. Sales Litig., 148 F.3d 283, 333 (3d Cir. 1998) (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821 (3d Cir. 1995)).  Percentage-based attorney's fees:

> (1) align the interests of claimants and lawyers by rewarding superior performance and punishing failure; (2) minimize the need to evaluate the reasonableness of attorneys' efforts ex post, which is both time consuming and often hard to do; and (3) transfer the burden of financing lawsuits and other risks from claimants to attorneys who are better able to bear them.  In keeping with the larger point of this Report, Judge Easterbrook also maintained that because claimants use contingent percentage fees almost exclusively, judges should use them when awarding fees in claimant representations.

Kirchoff v. Flynn, 786 F.2d 320, 326 (7th Cir. 1986).

In its 1985 report, the Third Circuit Task Force recommended that in the traditional common fund situation, a district court "should attempt to establish a percentage fee arrangement."  Task Force Report, 108 F.R.D. 237, 255 (1985). Since that time, the Third Circuit has, on several occasions, "reaffirmed that application of a percentage-of-recovery method is appropriate in common-fund cases."  In re Cendant Corporate

19

PRIDES Litig., 243 F.3d 722, 734 (3d Cir. 2001) (collecting cases).

In sum, there is a consensus among the federal circuit courts of appeal that the award of attorneys' fees in common fund cases may be based on a percentage of the recovery.  This consensus derives from the recognition that the percentage of fund approach is the better-reasoned and more equitable method of determining attorneys' fees in such cases.

B. The Percentage Requested by Plaintiffs' Counsel is Supported by the Work Performed, Risks Taken, and Results Obtained

Both state and federal courts in West Virginia have recognized the presumptive reasonableness of an attorneys' fee equal to one-third of a recovery.  As observed in Eriksen Const. Co., Inc. v. Morey, 923 F. Supp. 878, 881 (S.D. W. Va. 1996):

> The Court notes a one-third contingency fee is presumptively reasonable in West Virginia.  See Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323, 352 S.E.2d 73, 80 (1986).  Nevertheless, a forty percent (40%) contingency fee is a common fee contract proviso for cases that proceed to trial.

Id.; see also F.S. & P. Coal Co. v. Inter-Mountain Coals, Inc., 179 W. Va. 190, 366 S.E.2d 638 (1988) (a one-third attorneys fee is the "going rate" in contingency fee cases).  This authority supports the requested award in this case.

20

Some courts also consider certain factors in analyzing the reasonableness of fees determined by the percentage of recovery method.  These factors can include:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment;(6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Cendant, 243 F.3d at 733 (quoting Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1) (citations omitted).  The Gunter court instructed that there is no specific formula for analyzing these factors.  "Each case is different, and in certain cases, one factor may outweigh the rest."  Gunter, 223 F.3d at 195 n.1.

All of these considerations warrant an award of the requested fees and costs in this case.  The fund established for class members is substantial.  Judging by the fact that no class members objected to the proposed settlement, the class members support the settlement.  Additionally, class counsel are skilled and experienced in class action litigation, and have served as class counsel in several cases.

The case involved complex technical legal and factual

21

issues regarding the defendants' loan servicing systems and policies, application of state consumer protection law, and difficult federal preemption issues.  Considering the possibility of appeals, resolution of the litigation could have taken years. And counsel bore a substantial risk of nonpayment.  This court or the court of appeals could conceivably have ruled for defendant on class certification, the merits, and preemption.  The outcome of the case was hardly a foregone conclusion, but nonetheless counsel accepted representation of the plaintiff and the class on a contingent fee basis, fronting the costs of litigation.  In so doing, counsel have achieved a quite satisfactory settlement result.

The amount of time devoted to the case is substantial. Counsel's firm has heretofore spent over 340 hours on the case and has been required to spend still more hours in preparation for the fairness hearing and must expend many more hours in helping administer the settlement, searching for missing class members, reporting to the court from time to time on the progress of the payout, and carrying out remaining obligations to the court and class members.  (Barrett Decl. ¶ 2).

Finally, the one-third fee requested by counsel is in line with fee awards in similar common-fund cases heard in West

22

Virginia.  See, e.g., Hackworth v. Telespectrum Worldwide, Inc.,
Civil Action No. 3:04-1271 (S.D. W. Va. 2004) (Chambers, J.) (in
WARN Act class action settlement, awarding fees of 1/3 the amount
of the settlement, plus costs); Mason v. Abbot Labs., Civil
Action No. 5:99-081 (N.D. W. Va. 2001) (Keeley, J.) (awarding a
25% fee of the $1,705,200 settlement); Kidrick v. ABC Television
& Appliance Rental, Inc., 1999 WL 1027050 (N.D. W. Va. 1999)
(Broadwater, J) (awarding a 30.6% fee award ($122,539.84)); Adams
v. Advanced Mgmt., Inc., Civil Action No. 3:94-042 (N.D. W. Va.
1994) (Stamp, J.) (awarding class counsel 35% of the total
settlement); Reynolds v. A&I Co., Civil Action No. 01-C-538
(Circuit Court of Kanawha County) (Bloom, J.) (awarding attorney
fees of 32.5% in an asbestos class action).

        Consideration of all of these factors support the
requested award of one-third the amount of the common fund
established for the class, plus litigation costs.

        VI. Reasonableness of the Proposed Service Award

        Incentive or service awards reward representative
plaintiffs' work in support of the class, as well as their
promotion of the public interest.  Courts around the country have

23

allowed such awards to named plaintiffs or class representatives.
See, e.g., In re Domestic Air Transp. Antitrust Litig., 148
F.R.D. 297, 357-58 (N.D. Ga. 1993) (awarding $142,500 to class
representatives out of $50 million fund); In re Dun & Bradstreet
Credit Svcs. Customer Litig., 130 F.R.D. 366, 373-74 (S.D. Ohio
1990) (awarding $215,000 to several class representatives out of
an $18 million fund).  One district court has gone so far as to
say that incentive awards are "routinely approve[d]."  Cullen v.
Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000).  The
purpose of such awards is to encourage socially beneficial
litigation by compensating named plaintiffs for their expenses on
travel and other incidental costs, as well as their personal time
spent advancing the litigation on behalf of the class and for any
personal risk they undertook.  Varcallo v. Mass. Mut. Life Ins.
Co., 226 F.R.D. 207, 257 (D.N.J. 2005).

     Class members would have received nothing had Mr.
Muhammad not been willing to step up and file this action.  Mr.
Muhammad gave his time and effort to prosecute the case.  He
attended numerous meetings with counsel and counsel's staff.  He
assisted in drafting discovery responses, and consulted with
counsel regarding critical aspects of the settlement.  He made
himself available to counsel whenever he was needed, and stood

willing to do whatever would be asked of him -- including

testifying at deposition, class certification proceedings, and at

trial - as the case progressed.

Accordingly, the court finds that the proposed service

award is justified and appropriate.

## VII. Conclusion

Based upon the foregoing, the court concludes that the

proposed settlement is fair, reasonable and adequate.

Accordingly, it is ORDERED that:

1.    The plaintiff's unopposed motion for final approval of

        settlement, attorneys' fees and costs and service award

        be, and it hereby is, granted;

2.    Under Rule 23(3) of the Federal Rules of Civil

        Procedure, the Second Amended Class Action Settlement

        Agreement and Release be, and it hereby is, approved;

3.    The settlement agreement will become effective on

        January 21, 2009;

4.    Out of the total settlement proceeds of $700,000, the

        following are hereby approved and shall be paid:

        a.    A service award of $5,000 to Mr. Muhammad in

recognition of his service to the class;

b.    Attorneys' fees of $233,333 to class counsel,
      Bailey & Glasser LLP, plus litigation expenses of
      $9,000;

c.    A fee of $4,309 to the settlement administrator,
      SEA Information Systems, LLC, plus $16,000 for the
      remaining work it expects to perform to administer
      the settlement;

5.  The court retains jurisdiction over this action for the
    purpose of overseeing settlement administration and
    distribution of remaining settlement funds, if any; and

6.  The parties shall complete all remaining obligations
    under the Second Amended Class Action Settlement
    Agreement and Release, including the following:

a.    National City shall pay the settlement proceeds
      into a trust account established and maintained by
      plaintiff's counsel by February 20, 2009;

b.    The administrator shall distribute the settlement
      proceeds to the plaintiff class members by March
      9, 2009;

c.    Plaintiff's counsel shall file with the court an
      interim report by July 7, 2009, detailing the
      number of checks that have been cashed and the

26

number of checks that have been returned, and
describing generally the efforts that have been
made by plaintiff's counsel to locate those
individuals whose checks were returned;

d.    Plaintiff's counsel shall report back to the court
in twelve months from this date or thirty days
after distribution of the settlement amount is
completed, whichever is later, but in no event
later than March 1, 2010, with a final report
detailing the distribution of the settlement
funds.

The Clerk is directed to forward copies of this written
opinion and order to all counsel of record.

DATED:  December 19, 2008

John T. Copenhaver, Jr.
United States District Judge

27